UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Red Hook Container Terminal LLC,

Plaintiff,

–v–

South Pacific Shipping Co. Ltd., *et al.*,

Defendants.

15-cv-01483 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

South Pacific Shipping Co. Ltd. And Ecuadorian Line Inc.[1] bring this motion under Rules 52(b) and 59(e) to amend this Court's January 18, 2019 Findings of Fact and Conclusions of Law. Dkt. No. 119. For the reasons given below, those motions are DENIED.

I. **BACKGROUND**

The Court assumes the parties' familiarity with the underlying facts of this case. In short, the parties had a contract under which South Pacific's ships would arrive at the terminal operated by Red Hook Container Terminal LLC ("Red Hook") and Red Hook would provide stevedoring and other terminal services. Findings of Fact and Conclusions of Law (the "Judgment"), Dkt. No. 119, at 7. South Pacific kept equipment at Red Hook's terminal, specifically seventy-two refrigerated containers, seventy chassis, and forty-six portable generator units, which the Court will refer to as "the Equipment." *Id.* at 7. At that time, South Pacific owned or leased the Equipment. *Id.* at 7-8. In November of 2013, South Pacific's vessels called on Red Hook's terminal for the last time. *Id.* at 9-10. Citing unpaid fees, Red Hook placed a "terminal hold" on

---

[1] For the purposes of brevity, the Court will refer to both parties as "South Pacific."

1

the Equipment, refusing to release it until Red Hook was paid what it considered it was owed. *Id.* at 11-12.

On February 27, 2015 Red Hook filed a complaint for breach of contract against South Pacific. Dkt. No. 1. On April 15, 2015, South Pacific filed an answer, along with counterclaims for conversion and breach of contract. Dkt. No. 5. Beginning February 6, 2018, this Court held a two-day bench trial. On January 18, 2019, this Court issued its Judgment and judgment was entered on January 23. Dkt. Nos. 119 & 120. As is relevant here, the Court found in favor of South Pacific on its conversion counterclaim and awarded South Pacific the full value of the Equipment at the time of conversion, along with interest. *Id.* at 41. On January 31, 2019, Red Hook filed an appeal of the Court's Judgment. Dkt. No. 121.

On February 19, 2019, South Pacific filed a motion to amend the Court's Judgment under Federal Rules of Civil Procedure 52(b) and 59(e). Dkt. No. 130. Red Hook then filed an opposition to South Pacific's motion and South Pacific replied. Dkt. Nos. 135 & 136.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 52(b), a court "may amend its findings—or make additional findings—and may amend the judgment accordingly." "A party moving pursuant to Rule 52(b) may seek to correct manifest errors of law or fact." *Soberman v. Groff Studios Corp.*, No. 99-cv-1005 (DLC), 2000 WL 1253211, at *1 (S.D.N.Y. Sept. 5, 2000) (quoting *United States v. Local 1804–1, Int'l Longshoremen's Ass'n*, 831 F.Supp. 167, 169 (S.D.N.Y.1993), *aff'd sub nom. United States v. Carson*, 52 F.3d 1173 (2d Cir.1995)). However, "[i]t is not the purpose of Rule 52(b) to permit parties to 'relitigate old issues, to advance new theories, or to secure a rehearing on the merits.'" *Id.* (quoting *Local 1804–1*, 831 F.Supp. at 169).

Under Federal Rule of Civil Procedure 59(e), a court may "alter or amend judgment to correct a clear error of law or prevent manifest injustice." *ING Global v. United Parcel Serv.*

2

*Oasis Supply Corp.*, 757 F.3d 92, 96 (2d Cir. 2014) (quoting *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 153 (2d Cir.2008)). "Applying this standard, a district court should provide relief under Rule 59(e) only in rare cases." *Tse v. New York Univ.*, No. 10-cv-7207 (DAB), 2016 WL 10907032, at *1 (S.D.N.Y. Oct. 13, 2016) (citing *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009)). "[A] judgment in a civil case does not constitute 'manifest injustice' where the movant's arguments for relief 'were available to the [party] below and [the party] proffer[s] no reason for [its] failure to raise the arguments.'" *Corsair Special Situations Fund, L.P. v. Nat'l Res.*, 595 F. App'x 40, 44 (2d Cir. 2014) (quoting *In re Johns–Manville Corp.*, 759 F.3d 206, 219 (2d Cir. 2014)).

Rule 52(b) and 59(e) are accordingly governed by similar and similarly demanding standards. *See, e.g.*, *Peterson v. Islamic Republic of Iran*, No. 10-cv-4518 (KBF), 2013 WL 2246790, at *1 (S.D.N.Y. May 20, 2013) (citing cases). Nonetheless, the two rules have "distinct applications" as "Rule 52(b) provides a method to dispute underlying facts that resulted in faulty factual findings or conclusions of law based on those facts," while "Rule 59(e) provides for a broad request for reconsideration of the judgment itself." *Endo Pharm. Inc. v. Amneal Pharm., LLC*, No. 12-cv-8060 (TPG), 2016 WL 1732751, at *2 (S.D.N.Y. Apr. 29, 2016).

### III. DISCUSSION

South Pacific contends that after the Court issued its Judgment, it sought the return of the Equipment from Red Hook, but Red Hook refused. Dkt. No. 131, at 2-3. Red Hook does not dispute that it will not release the Equipment. In light of this, South Pacific requests that the Court amend its Judgment by either: (A) ordering Red Hook to release the Equipment and finding affirmatively that Red Hook has no right to possess the Equipment, or (B) altering the measure of conversion damages from the full value of the Equipment at the time of conversion to the amount of money South Pacific paid to the lessors of the Equipment through December of

3

2016. The Court addresses each of these requests in turn.

### A. It Was Neither Clear Error nor Manifest Injustice for the Court to Not Order the Release of the Equipment

South Pacific first argues that unless Red Hook is ordered to return the Equipment, South Pacific will either be required to continue paying *per diem* lease charges on the Equipment or pay the lessors a stipulated value for the Equipment under the relevant leases. This, South Pacific contends, would work a manifestly unjust result. Dkt. No. 131 at 3. This argument fails for two reasons. First, South Pacific is improperly attempting to request a new form of relief on a Rule 59(e) and 52(b) motion. Second, South Pacific does not offer sufficient evidence in the record showing that it was clear error or manifestly unjust to deny it the recovery of both the full value of the Equipment and the Equipment itself.

#### 1. South Pacific Cannot Request New Forms of Relief on Rule 59(e) and 52(b) Motions

As an initial matter, South Pacific's motion impermissibly attempts to raise new arguments that it could have presented at trial. Rule 59(e) and 52(b) motions "should not be used 'to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *In re Salomon Analyst Winstar Litig.*, No. 02-cv-6171 (GEL), 2006 WL 510526, at *1 (S.D.N.Y. Feb. 28, 2006) (quoting *Anglo-Iberia Underwriting Mgmt. Co. v. Lodderhose*, 282 F.Supp.2d 126, 131 (S.D.N.Y.2003)). Here, the first and only time South Pacific requested that Red Hook be required to return the Equipment was in the counterclaim complaint. Dkt. No. 5, at 12. After that, the argument then disappears. In the Joint Pretrial submissions, South Pacific only stated that it sought monetary damages, along with fees and costs. Dkt. No. 70 at 21-22. Similarly, there is no mention of ordering the release of the Equipment in South Pacific's pretrial or post-trial briefing. Dkt. No. 68 at 32; Dkt. No. 69 at 25;

4

Dkt. No. 112 ¶¶ 143-50; Dkt. No. 112-1 at 21-23; Dkt. No. 117 ¶¶ 174-75; Dkt. No. 118 at 17-18. South Pacific points to a few sections in its post-trial briefing in which it argued that Red Hook was improperly detaining the Equipment, Dkt. No. 136 at 3-4, yet in context these were simply arguments supporting its conversion counterclaim, not requests for any separate form of relief. South Pacific offers no reason why it failed to request this relief previously. *See Corsair Special Situations*, 595 F. App'x at 44 (citing *In re Johns-Manville*, 759 F.3d at 219)). Accordingly, its motion warrants denial for this reason alone.

### 2. It Would Not Be Manifestly Unjust to Deny South Pacific's Request for Both the Full Value of the Equipment and the Equipment Itself

Even if the Court were to consider South Pacific's argument, it would still be unavailing. To avoid double recovery, a party generally cannot recover both the full value of the converted property and the return of the property itself. *See, e.g.*, Dan B. Dobbs and Caprice L. Roberts, Law of Remedies 3d Ed.§ 4.4(5) (2018) ("The familiar principle of damages law is that the remedy should not provide more than one full compensation"); *Grogan v. Garner*, 806 F.2d 829, 839 (8th Cir. 1986) ("[a] plaintiff . . . may sue for conversion of property or he may bring a replevin action to recover the property itself" as otherwise there is a risk of "double recovery" (citing *Myzel v. Fields*, 386 F.2d 718, 740-41 (8th Cir.1967), *cert. denied*, 390 U.S. 951 (1968) and Dan B. Dobbs, Remedies, § 1.5 at 14 (1973)); *cf. Truth Seeker Co. v. Durning*, 147 F.2d 54, 56 (2d Cir. 1945) (return of property mitigates damages in a conversion action); Restatement (Second) of Torts § 922 (1979) ("The amount of damages for the conversion of a chattel is diminished by its recovery or acceptance by a person entitled to its possession."). Awarding South Pacific both the full value of the Equipment and recovery of what it recognizes is "valuable equipment," Dkt. No. 136 at 4, would mean that South Pacific would essentially

5

receive the value of the Equipment twice over.[2] Unless South Pacific could show that there was some harm for which the full value did not adequately compensate it, it is not entitled to greater recovery.

South Pacific fails to make such a showing. South Pacific contends that an exception to the general principle prohibiting double recovery is warranted because unless the Equipment is returned to it, it will be required to pay either (1) continuing *per diem* lease fees or (2) contractually-stipulated prices for lost or confiscated equipment under the relevant leases. Dkt. No. 131 at 3. It is true that if South Pacific is entitled to be made whole for the losses it has shown resulted from the conversion. *See, e.g., Wm. H Wise & Co. v. Rand McNally & Co.*, 195 F. Supp.621, 629 (S.D.N.Y. 1961). Yet South Pacific has failed to show based on evidence in the record that it will face either of the above two costs if the Judgment is not amended. The Court addresses each alleged cost in turn.

First, South Pacific expressly disclaimed that any lease payments post-December 2016 were at issue, successfully prevented discovery of documents related to such payments as a result, and did not introduce evidence at trial about such payments. Accordingly, it cannot now argue that the Court's failure to take such payments into consideration would be clear error or manifest injustice. During a discovery dispute, Magistrate Judge Pitman denied Red Hook's request for the production of documents relating to post-December 2016 lease payments. Dkt. No. 75 ¶ 1; Dkt. No. 77 at 20:6-21. In making this decision, Judge Pitman found that such documents were irrelevant because South Pacific disclaimed that it sought damages for any post-December 2016 lease payments and because South Pacific was "retreating" from its prior contention that the lease payments would continue through the time of trial. *Id.* at 9:19 – 10:1,

---

[2] Of course, the value of the Equipment could theoretically have declined post-conversion, but South Pacific does not argue that any such deterioration would justify what would otherwise be double recovery.

20:6-21; *see also* Dkt. No.75. As part of this, South Pacific submitted a revised declaration by its president, Jorge Guerrero, removing a paragraph testifying that the lease payments would continue through the time of trial. *See* Dkt. No. 67-3 ¶ 39; Dkt. No. 74; Dkt. No. 77 at 8:1-20. All the declaration retained was a vague statement that payments were "continuing to the present," which was August of 2017. Def. Ex. 55 ¶ 34. Then at trial South Pacific only introduced evidence of lease payments running until December of 2016 and again only sought damages for that time period. As South Pacific expressly chose not to seek any relief related to the post-December 2016 lease payments, obtaining a favorable ruling as a result, it cannot now turn and argue that it would be manifest injustice or clear error for the Court not to consider such payments. Finally, while South Pacific submitted an affidavit along with its current motion stating that such payments continue, Dkt. No. 132, this was not permitted under Local Rule 6.3 without order of the Court, something South Pacific does not contest. Dkt. No. 136 at 2. Nor does South Pacific explain why this evidence could not have been presented earlier. Accordingly, without record evidence about the continuing lease payments at the time of the Court's Judgment—again, not least because of South Pacific's own strategy—South Pacific cannot now rely on such payments to seek greater recovery. If the Court did not take into account continuing payments in its Judgment, this is not manifest injustice or clear error, it is the result of South Pacific's own litigation decisions.

Second, South Pacific's argument that it will be responsible for contractually-stipulated fees for the Equipment similarly lacks support in the record. Once again, South Pacific does not point to any arguments relating to these stipulated fees in its prior briefing, much less arguments that these fees warranted return of the Equipment, which would be sufficient on its own to warrant denial. *See, e.g., In re Salomon*, 2006 WL 510526, at *1. Yet even if considered, this

argument fares no better. South Pacific asserts that if it does not make the unspecified continuing lease payments, it will be responsible for contractually-stipulated lost equipment fees based on provisions in the containers and chassis leases (there is no mention of any such provision in the lease for the generator sets, which is not in the record). Dkt. No. 136 at 5 (citing Def. Ex. 20 ¶ 5 & Def. Ex. 21 ¶6(e)). Yet by their own terms these leases expired in 2011, Def. Ex. 21 at 1, and 2014, Def. Ex. 20 at 1. South Pacific does not point to any evidence in the record that the specific provisions in these leases remained operative as of the date of the Judgment. Accordingly, South Pacific has not sufficiently shown that it would be required to pay such fees and that the Court's failure to consider these clauses was clear error or manifest injustice.

Finally, South Pacific contends that it would be clear error or manifestly unjust to allow Red Hook to retain the Equipment, as "such a scenario would provide a winfall [sic] to [Red Hook] in that they would cover their conversion damages with the valuable equipment." Dkt. No. 136, at 4. Yet far from being a clearly erroneous or manifestly unjust result, this is a typical outcome of a successful conversion action.

**B.     South Pacific Is not Entitled to a Recalculation of the Amount of Damages**

South Pacific alternately argues that the Court should amend the Judgment to state that the conversion damages are not measured by the full value of the Equipment but rather the value of the lease payments up until December 2016. While the sums of money are nearly identical, South Pacific contends that this different calculation would entitle it to the return of the Equipment. This argument is also unavailing.

In its proposed conclusions of law, South Pacific appeared to seek damages for both the full value of the Equipment at the time of conversion and the amount of money it had paid to

8

lease the Equipment from December 11, 2013 to December 31, 2016. Dkt. No. 112-1, at 21-23. The full value of the Equipment was $850,000 and the lease payments up until December of 2016 were alleged to be $845,138.64. Dkt. No. 112 ¶ 144. In its Judgment, the Court held that awarding both forms of damages would result in double recovery. The Court reasoned as follows. If Red Hook had not placed the terminal hold, at the time South Pacific could have either: (1) returned the Equipment to the lessors or (2) kept the Equipment and continued paying the leases upon it. Judgment at 39-40. There was no scenario in which South Pacific had possession of the Equipment but was not making lease payments. *Id.* Accordingly, South Pacific's harm could be understood either as the loss of possession or as the lease fees, but not both at once. *Id.* Thus, compensating South Pacific for both the loss of possession and the resulting lease payments would constitute double recovery. *Id.*

Having determined that South Pacific was only entitled to one of these two forms of damages, it was neither clear error nor manifest injustice for the Court to conclude that full value was a more appropriate measure of damages. As the Court initially noted, under New York law, "[t]he usual measure of damages for conversion is the value of the property at the time and place of conversion, plus interest." *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 325-26 (1980); *see also Rajeev Sindhwani, MD., PLLC v. Coe Bus. Serv., Inc.*, 52 A.D.3d 674, 676 (2008). Furthermore, it was South Pacific's burden to produce sufficient evidence "to form a basis for an estimate of damages with some degree of exactness." *Henderson v. Holley*, 112 A.D.2d 190, 191 (1985) (quotation marks omitted). The Court found that the full value was a more appropriate measure of damages not simply because it was the usual measure, but also because in this case it provided a surer calculation of damages given inconsistencies and gaps between calculations in the leases and invoices presented by South Pacific. Judgment at 12-13,

39-40. Indeed, the Court did not pass judgment on the question of whether the invoices and leases were sufficient evidence on which to estimate damages. *Id.* at 12-13. Finally, the Court noted that the full value of the Equipment was also slightly higher than the amount of lease payments requested and thus South Pacific was not deprived of any recovery as compared to the alternate method. *Id.* at 40. This result was neither clear error nor manifestly unjust.

None of South Pacific's arguments to the contrary are persuasive. South Pacific contends that this result overlooked the evidence in the record that at the time of the terminal hold South Pacific was planning to off-hire the Equipment rather than keep it. Dkt. No. 136 at 4. Yet as noted above, the Court's reasoning took into account such a scenario, found that it would not entitle South Pacific to more damages than the full value of the Equipment, and then determined that the full value was a surer measure of damages. South Pacific also argues that if the Court awarded South Pacific the lease payments rather than the full value, South Pacific would be entitled to recovery of the Equipment. Yet this argument fails for the same reasons as above. South Pacific failed to argue previously that it was entitled to the Equipment and has failed to show that it was clear error or manifest injustice for the Court not to order return of the Equipment. Thus, South Pacific has not shown that once it was awarded the full value of the Equipment (whether described as such or as the nearly identical sum of lease payments), it was also still entitled to the Equipment itself. Accordingly, South Pacific has failed to show that the Court's damages award was manifestly unjust or clearly in error.

## IV. CONCLUSION

For the reasons given above, South Pacific's motion is DENIED. This resolves docket item number 130.

Dated: September 16, 2019

New York, New York

10

_____
ALISON J. NATHAN
United States District Judge